Craig Eugene Smith. I'd like to reserve three minutes for a rebuttal. This court should reverse the District Court's grant of summary judgment to the defendants because the totality of the record before the District Court created a genuine dispute of material fact about whether the defendants violated Mr. Smith's 14th Amendment due process rights when he was given 365 days, a full year of disciplinary detention, and was transferred to the maximum security Iowa State Penitentiary because of allegations of misconduct that a state court later ordered expunged from his disciplinary record. Well, you're starting with an issue that bothered me as I prepared on this case, and that is the standard review. I wrote an opinion saying that this was an issue of fact, a significant and atypical hardship, but in reading or reading again Wilkinson, which may have actually been after the Portley-Ell decision, I think the Supreme Court considers it an issue of law, which is quite typical of the court to take a critical constitutional issue such as that and reserve the ultimate ruling for itself, which makes it an issue of law. Have other circuit courts considered this, to your knowledge? Yes, Your Honor. Respectfully, we read Wilkinson to suggest that after the Sandin decision that the analysis of the significant and atypical hardship is one that is fact-specific. The District Court in this case... Doesn't mean it isn't an issue of law. That's certainly true, Your Honor. We went around with this first in-bank case I had as whether detention for Fourth Amendment purposes, which is very fact-intensive, was an issue of fact or law. And my research suggested it had to be one of law because every time the Supreme Court talked about what it was doing, it reached a conclusion. It did not make a finding. And our divided in-bank court said, yeah, it's an issue of law, even though it looks like an issue of fact, like negligence. So what do we have here? How many circuits have even looked at this, thought about it? Your Honor, this course in the Williams v. Norris case reassessed and evaluated what happened in Wilkinson. And in Norris, there was an inmate who spent 12 years in administrative segregation across two states. And as a part of his detention, there were reviews at 60-day intervals where the court reviewed the detention to determine whether it was appropriate. The court actually reversed the court on summary judgment, finding that under the due process claim, the court needed to determine, as a matter of fact, whether the detention in that case was appropriate and whether the reviews that were conducted of the defendant's detention were sufficient under the due process clause. We believe that after Williams v. Norris, in keeping with Wilkinson, in keeping with Sandin, that this is an issue of fact. But it's also important that we talk about Wilkinson for another reason, Your Honor. And that is because Wilkinson demonstrated that even in light of Sandin, an inmate like Mr. Smith can have a 14th Amendment deprivation under the due process clause. The Constitution says that the nature and the conditions themselves are what we have to evaluate under the Wilkinson precedent. Here, Mr. Smith's confinement was substantially different after he was disciplined and after he was transferred, because he spent an entire year, 365 days, in disciplinary detention. And then he was moved to the state's only maximum security facility. It's also important to stress that the Wilkinson court wasn't determining the floor under the 14th Amendment analysis. Indeed, the court said that the facts in Wilkinson are so extreme that we do find a deprivation of the due process clause. And I will certainly, in all candor, be clear that the facts of this case are not identical to the facts in Wilkinson. But the court explicitly said we're declining to reach the issue of what would constitute the minimum required for a deprivation. And the district court in this case found the same. It said, granting that Wilkinson does not describe the floor for what constitutes an atypical insignificant deprivation. That was on the sixth page of the district court's opinion. It's also important to note that Sandin, which is the case that the defendants have relied very heavily on both below and here before this court, does not foreclose relief for Mr. Smith. And Sandin can be distinguished from the scenario that we see here. Sandin was, of course, a pre-Wilkinson case where the inmate was given 30 days of segregation on one major misconduct charge and four hours of segregation on a minor misconduct charge. But because Sandin was pre-Wilkinson, the court didn't have the benefit of the finding which expressly recognized that certain discipline can give rise to a protected liberty interest. Counsel, that's all true, but don't we have to have facts in the record from which we can make a determination showing the impact upon the plaintiff's life? So, compared to facts, what was prison life like before? What's it like after the detention? Yes. Disciplinary detention. And what do we have in this record to show us that? Your Honor, we have several facts. And you're exactly right that the trial court needs to do a comparison of what the inmate was encountering before the discipline with what he encountered as a result of the discipline. We know here that he was in disciplinary detention for 365 days. The administrative law judge described that as, quote, maximum custody at page 141 of the appendix and page 146. The administrative law judge said that he was... But wasn't he in disciplinary detention in the other facility? The transferor facility? Yes, Your Honor. He began his disciplinary detention service at Fort Dodge, and he continued to serve the remainder of the term at the Iowa State Penitentiary. So where does this get us? Until the decision was undone by the state court, no problem. Well, it was not only... There's nothing to compare. They were the same. Well, Your Honor, before the discipline, he wasn't in disciplinary detention. He was in the general population in Fort Dodge. It wasn't until after the administrative law judge made the finding that, as Your Honor points out, was eventually undone a couple of years later that he was moved into disciplinary detention at the Fort Dodge facility. Is the disciplinary detention itself described? It's described by Mr. Smith as, quote, the whole. He described it in a couple of places in the subject of various interpretations, perhaps. That's exactly right, Your Honor. And that's why we believe this is an issue that should have gone to the fact finder, so that the fact finder could determine whether that service in the whole for 365 days, along with all of the other facts that demonstrate the deprivation that he suffered, rises to the level of being a 14th Amendment problem. We agree with, Your Honor, that that is a factual dispute. There are multiple interpretations. I thought we were talking about the transfer. I thought the remedy was granted with respect to the disciplinary detention in both facilities. And that this suit is all about, well, they didn't let him go back to Fort Dodge. That's correct, Your Honor, that the initial claim that Mr. Smith brought was about both the detention and his transfer. And his transfer to the— So the detention is not—is that an issue on appeal? Yes, Your Honor. It still is an issue, because he's— But how? Because he's brought a claim— It's been remedied. Well, Your Honor, we would respectfully disagree that it was entirely remedied. The Sandor dissenters made clear—in Sandon, the dissenters said that the no harm, no foul argument, which is similar to the argument that you're making, Your Honor, isn't necessarily always— I'm making an argument. The no harm, no foul determination that because he's no longer in disciplinary detention and because he received the 365 days good credit after the state court expunged that from his record doesn't necessarily cure the potential violation of the due process clause. That was what the two dissenters in Sandon said. But you're correct, Your Honor, that you're correct that we are challenging the transfer to the Iowa State Penitentiary. And to go back to your question, Judge Grass, about the other facts that we have— Well, what's the law that makes—that gives a right to contest the transfer to a different facility when our cases seem to say an inmate has no particular right to a specific place of incarceration? That's certainly true, Your Honor, that an inmate doesn't have a standalone liberty interest in being housed at a particular institution. But Wilkinson made clear that there can be a liberty interest in a transfer if the conditions, as Judge Grass said, rise to the level of providing a significant and atypical hardship. There, there were inmates who were housed at one facility in Ohio, and they were then transferred to the state's only supermax facility. And the court, in assessing that transfer, said that because there were various deprivations as a result of the transfer, some of the inmates who were eligible for parole lost that eligibility. Inmates— In this case, what are the facts that indicate his conditions would be substantially different in the two different facilities? The change in his tier status and his security points, the fact that he wasn't able to earn a job and make money during the year that he was in disciplinary detention, the fact, as we mentioned in our brief, that just like the discipline in Wilkinson, the discipline here is indefinite. He was transferred not for a particular term, as is often the case in the cases in this context, he was transferred indefinitely. And he's been at the Iowa State Penitentiary now for more than five years. The totality of those facts are what we believe should have been submitted to a trier of fact so that they could determine whether that rises to the level of being a significant and atypical hardship. The fact that the court didn't do that means that Mr. Smith was deprived of his 14th Amendment right. I also want to make the point that we're not asking this court to do something extreme or substitute its judgment for that of the prison and the warden. We appreciate that the cases have said that courts do not want to—federal courts—don't want to substitute their judgment for the judgment of the states or for the judgment of the prisons. We're simply asking that if the court finds that there was a deprivation of the Due Process Clause, that Mr. Smith be given the adequate process that the prisons are already set up to handle. They can do hearings. They can assess whether his confinement is appropriate, continued, as it has been indefinite for five years. And that's all we're asking the court to do. And, Your Honor, because we believe there was a material factual dispute at the trial court, we believe the judgment should be reversed. Well, how is there a material fact dispute on the nature of the whole if there's no The allegations in the complaint are that it was restrictive and it was more restrictive than what Mr. Smith was dealing with before. Certainly there isn't a declaration or an affidavit in the record describing specifically the whole, and certainly it would be helpful to have something like that. But our view is that it's not fatal to Mr. Smith's position and that there were enough facts to overcome the summary judgment hurdle. Did the state court order a transfer back to Fort Dodge? No, Your Honor. Was that raised? Was that relief sought in the state court? Mr. Smith didn't seek, he wasn't seeking to be returned in the state court, and the state court judge didn't address the question. So you're saying he had a federal constitutional right under these circumstances to be transferred back? He has a federal, we believe he has a federal constitutional right for process to determine whether it would be appropriate to transfer him back. We're not asking the court to say... Was that exhausted at ISP? The question whether he has a right to be transferred? Was there a grievance filed with ISP or whatever the transfer decision maker would be saying, given the state court's order absolving me of this prior discipline, I have a right to be transferred back to Fort Dodge? Yes, Your Honor. I understand the question. Yes, there was. Mr. Smith... Was, and what, is that in the, is the grievance decision in the record? Yes, Your Honor. Mr. Smith, after the decision by the state court, he filed an administrative appeal. Now, did the state resist the transfer back for reason, with an explanation that this, that was, that discipline wasn't the only reason we transferred you? No, that's not what the state said. The state said that we've restored your 365 days of good time credit, and we're denying the rest of your request. That was it. There wasn't a detailed explanation. They say here that, that, that there were, in fact, were reasons that he was transferred in addition to or over and above the, the specific sexual assault discipline. They do, Your Honor, but those facts aren't in the record. The administrative law judge didn't make that finding, and the ISP, when it was reviewing his appeal, didn't make that finding either. And I see, Your Honor, that my time is almost up, and I'd like to preserve the rest for rebuttal. Thank you, Mr. Harper. Ms. Wallace. May it please the court. My name's Lorraine Wallace. I'm an assistant attorney general for the state of Iowa, and I represent the five prison officials in this case. I would like to note, first and just foremost, that the one issue that's not at issue in this appeal is one of the defendants, Nick Ludwick, who was the warden of the Iowa State Penitentiary, died prior to the ruling in this case. Yeah, that's in the brief. And, and so there's only five appellees. Your Honor, it is clear. Fact versus law standard. Did you research that? I think it is a law. It's a question of... Research whether other... I asked the opposing counsel what other circuits have done, and they got no response. Did you look at that? No. I mean, Williams versus Norris was after Wilkinson. It certainly would have taken Portly L as the governing a circuit law, that it's a question of fact, unless it was argued that, wait a minute, Wilkinson implicitly overruled Portly L. That's a serious question. Apparently, nobody's researched it. Okay, move on. We'll have to do it ourselves. Your Honor, it is clear. I don't think there is a question that Sandin has not been... Wilkinson didn't overrule Sandin. Sandin is still good law today. Because it embraced Sandin. Right. And it clarified it. Exactly. To the extent you could read Sandin as creating a question of fact, Wilkinson can modify that. Well, Wilkinson... Wilkinson is totally and specifically distinguishable. And the reliance upon Wilkinson here by the plaintiff is misplaced. Specifically, ISP segregation is not... The segregation, Fort Dodge and ISP, Iowa State Penitentiary, it's the same. It is not a supermax prison. It is not devoid of human conduct, contact. Let's get to the argument. Is there anything in the record to tell us what the whole means? In terms of conditions of confinement? No, the whole is segregation. So we really can't make that comparison that's necessary to look at conditions and duration. Based on the record. Based on the record. The record is that he spent 365 days in segregation. But we don't know what that is, factually, the conditions of that segregation. Well, yes, we do. It's segregated and it's based upon... It's a specialized unit where... I thought there were statewide regs or protocols on this. Correct. There are. Well, there are official records. They're in our record on appeal. Do they help us in this regard? They definitely help us. I mean, you know, it's not... What you're trying to do is determine whether... I thought your brief argued that because of those statewide protocols, the record permits, supports the inference that the whole is the same at Fort Dodge and ISP. Exactly. That's exactly correct. And I too, though, was a bit confused upon... It's the transfer from segregation at Fort Dodge to ISP, which is the same level of... But it's clear under Meacham, the Supreme Court case, that prison officials can transfer someone for any reason or no reason at all. And in this particular case, the record is clear. This business about the transfer, it's clear that, number one, the defendants in this case did not even make the decision to transfer Mr. Smith from Fort Dodge to ISP. It was made by Offender Services. Second of all, there were many other factors. Yes, granted that the sexual assault discipline was one factor of many, but a primary factor was the threats that Mr. Smith made after he received the disciplinary notice to Counselor Mooney, who's not... That raises for me an exhaustion question. So Counsel says it was grieved after the state court ALJ order, vacating or whatever, expunging the discipline, but not ordering him transferred back, understandably. And then he grieved that. And Counsel says there was no reason given, and now there are lots of reasons given by you in your brief. I don't think that... I don't understand. We should have more of a record on why your client denied the transfer back. Well, first of all, I don't think the grievance was about being transferred. I think it was about... And the grievance is in the record. Then you've got a real exhaustion problem. I... If he didn't grieve, transfer back. Right. This PLRA bars us, doesn't it? Right. But that wasn't raised. That is... Affirmative defense, and apparently it wasn't raised. Okay. But... Doesn't help our situation much. Furthermore, the transfer... Transferring is not part of the disciplinary process. It's part of a classification process, which has its own appeal mechanism. And which, if you read the record, I think once he was taken to segregation at Fort Dodge, he wanted to go back to ISP. He stated so to the officers when he was being taken to segregation at Fort Dodge. Furthermore, this business about the transfer is indefinite. He's indefinitely at ISP. That's just simply not true. The reasons why he's currently still at ISP is not based on this discipline or anything to do with that. It's about his subsequent actions and various serious three separate disciplines that he picked up at ISP afterwards. It has nothing to do with the sexual assault discipline. So the transfer back... I can see that as very relevant in the grand scheme of things. I'm not sure why it's relevant to the due process appeal we're considering. Well, you go back to the Wilkinson case. One of the things that they said... No reasons for transfer or no re-transfer. It doesn't have anything to do with the comparative conditions. Well, Wilkinson says that you're indefinitely... to the transfer to the Supermax in Ohio. That is not the case in this case. He was sentenced to... The sanction from the discipline was 365 days in... It seems to me this is a transfer grievance issue posing as a Sandan issue. Once he's gotten remedy that he considers inadequate for what the state ALJ did, and then what's... Did he go back to the state court saying, hey, they didn't make me whole? No. So then his complaints are with the prison administrators, since we're talking about conditions of confinement and placement. It's my interest... And so where do we get this question of whether he'd have a job if he was back at Fort Dodge, and he can't have a job at ISP and so forth? Well, he could have a job at ISP, just as much as he could have a job at Fort Dodge. And there's no constitutional right for a job anyways, that's clear. His security points, he brings up the security points. He can work his way... The problem is that he did subsequent disciplinary actions and threatened to kill someone at ISP. So his security points, he has no constitutional rights in those either. They clearly don't create a liberty interest. You don't have a liberty interest in your security points under Sandan, and it's his subsequent actions that changed, that kept his security points where he's at. He had the same ability at Fort Dodge and ISP to up or down the security points. So there's no difference there. He did not, Your Honor, and Judge Loken, this is not a case of retaliatory transfer. It's a due process case. He is making two claims in his due process claims. One, that 365 days in segregation violated my due process rights, no matter what prison I'm in. And two, the due process violation on the transfer. Is there a procedural due process component, or are we just talking substantive due process? I think it's a procedural due process claim. What's the process then? Substantive due process is a... I can't remember our catch word for the extent of a substantive deprivation. It's my understanding that he was... Lokenson may have been, I don't know. No, I think... Actually, they prevailed. They found no procedural due process violation. Right. The lower court had found procedural. But then... We're not talking... What's the process? What procedural process was denied? We're all talking substance this morning. Counsel, I thought his claim was that he'd suffered an atypical or significant hardship due to his administrative or segregation. Correct. That's substantive. Well, under Sandin, that's... Sandin was a procedural due process case, Your Honor. Well, I mean, the significant atypical deprivation gets you a liberty interest. Right. That makes you eligible for both procedural and substantive due process. And I want to just clear something up here. I think we aren't... Sandin, you're comparing segregation, not to what his life was before or after this discipline, but whether segregation was significant and atypical of the normal incidence of prison life. So, you know, they go into in Sandin, well, segregation... But that gets you through the due process front door. Now, what's the underlying deprivation claimed here? I didn't go back and study the complaint. His underlying due process claim is that he was put in segregation for 365 days and that he lost security points in his job. That's what he claimed in the... Okay, but that's not a procedural due process claim. Procedural claim would be, I've got a liberty interest to entitling me to a procedure to question this significant atypical deprivation I'm being subjected to. But that isn't the claim here. The claim here is it's just, it's unconstitutional deprivation. Right. I think. I haven't studied the complaint. So he's got a two-step. He's got a, I got to get it. I got to have it. It's got to be serious enough to get me in the front door. And then it has to be so serious that it's substantive due process violation. Your Honor, what I can say is this. Judge Pratt, I think, properly analyzed this complaint. Short circuited it a bit. No, I don't think so. I think he followed. He closed the front door to use my analogy. Yeah, but he followed the law given in Sandin and Wilkinson and properly dismissed the complaint. Which I see I'm out of time and I would respectfully request that you uphold the decision below. Thank you. Thank you, Ms. Wallace. Mr. Harper, your rebuttal. We'll give you a full minute. Thank you, Your Honor. I want to start by trying to clear up the confusion on the record about whether Mr. Smith ever requested at the Iowa State Penitentiary to be returned to Fort Dodge. And I direct the court to page A170 and A171 of the appendix. You'll see Mr. Smith's grievant appeal form, which he filed in November of 2016 after the state court decision. He said, among other things, I quote, I request to be placed back in my tier six level and return to Fort Dodge Correctional Facility. So he said to the Iowa State Penitentiary in his grievance form that he wanted to be returned. That appeal was denied and there were no additional reasons given to go back to Judge Loken's question about why that denial issued. And finally, I'll say on the question of fact versus law, the Williams versus Norris case, which was assessing the significant and atypical hardship in light of Wilkinson, the court did cite the Portley L case specifically for the proposition that the analysis under this question is one of fact. That was an unpublished decision. That's true, Your Honor. That's correct. I'll bet it didn't contain any analysis of whether the reasoning in Wilkinson undercut the Portley L interpretation of Sandin. It didn't, Your Honor. It was the strongest case that we could find citing for the proposition that it's one of fact. And with that, we'd respectfully request that the district court's judgment be reversed. Thank you, Your Honors. Thank you, Mr. Harper. Court notes that your representation is based on civil appointment and we appreciate your willingness to accept that appointment. Thank you. Court will be in recess for 10 minutes and we'll return for the final two cases.